COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                       

NUMBER 13-09-00435-CV

IN THE INTEREST OF J.K.R. A/K/A J.K.C., CHILD
                                                                                                                                      

On appeal from the 135th District Court
of Victoria County, Texas.
                                                                                                                      
 
NUMBER 13-09-00436-CV

IN THE INTEREST OF M.R.C., R.L.B. JR., AND A.B., CHILDREN
                                                                                                                     

On appeal from the 267th District Court
of Victoria County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Garza, Benavides, and Vela
Memorandum Opinion by Justice Benavides
          Appellant, Amy Clark, appeals the district court’s order for the involuntary
termination of her parental rights to her four children


 under Texas Family Code section
161.001. See Tex. Fam. Code Ann. § 161.001 (Vernon 2008). By four issues, Amy argues
that the evidence presented during the termination hearing was legally and factually
insufficient to support a finding that: (1) termination of the parent-child relationship was in
the children’s best interest; (2) she knowingly placed or knowingly allowed the children to
remain in conditions or surroundings which endangered their physical or emotional well-being; (3) she engaged in conduct or knowingly placed the children with persons who
engaged in conduct that endangered their physical or emotional well-being; and (4) she
failed to comply with the provisions of a court order that specifically established the actions
necessary for her to retake her children from the conservatorship of the Department of
Family and Protective Services (the “Department”). We affirm.
I. Background
          Amy is the mother of four children in the Department’s custody: M.R.C., born July
2, 2002; R.L.B. Jr., born August 24, 2004; A.B., born March 3, 2006; and J.K.R., born May
9, 2007. Robert Baladez is the father of all four children and lived with Amy and the
children intermittently.


 Robert had a history of family violence and arrests predating the
issues in this case. In October of 2006, the three eldest children were removed by the
Department following a determination that Amy and the children had been physically
abused by Robert. In March of 2007, Amy began living at Perpetual Help Home, a home
that provides a place to live for women and assists them in learning to take care of their
children. J.K.R. was born while Amy was living at Perpetual Help, and one month later, in
June of 2007, the three older children were returned to her care. Amy lived at Perpetual
Help until September of 2007. 
          Stephanie Cavazos, a licensed clinical social worker, worked directly with Amy at
Perpetual Help and testified that it was obvious to her that Amy loved her children, but was
not ready to leave Perpetual Help in September of 2007; however “there was no changing
[Amy’s] mind” about leaving. Amy found an apartment with the help of the Department.
          Just after Amy left Perpetual Help, a hearing to involuntarily terminate Robert’s
parental rights to the three older children was held. At Robert’s hearing, Amy testified that
Robert assaulted her on several occasions, had done so in front of the children, and was
also physically violent towards the children. Further, Amy testified that Robert had used
drugs in the home, sometimes in front of the children, and the house regularly was without
electricity and running water. Additionally, Amy testified that termination of Robert’s rights
was in the best interest of the children, and the court thereafter terminated Robert’s
parental rights as to the three older children, M.R.C., R.L.B., and A.B. 
          On three occasions following this hearing, however, Amy took the children to visit
Robert in prison, where he is currently serving a ten-year sentence for aggravated assault
against a public servant.
           In December of 2007, purportedly “to get some extra money” from her friend
Wayne, a man that she was “kind of” dating, Amy went on a trip with Wayne in his “18-wheeler,” leaving her four children with neighbors. At the time of the trip, J.K.R. was six
months old. Amy left food and diapers with the neighbors and left a key to her house in
case they ran out. Amy testified that she expected to be gone for a “few days.” According
to Amy’s testimony, because the truck broke down and she missed a bus in Dallas, she did
not make it home when expected. According to the Department, she was gone for
approximately eleven days. Amy contacted her CPS caseworker during this time, and
informed the caseworker that she was going to help a friend move to Houston and would
be gone for one day—not mentioning Wayne, the truck, or their stops in Florida and
Georgia. When Amy returned from this trip, the Department removed all four children from
her custody.
          Between December of 2007 and the date that the final order was signed in this case
on May 29, 2009, Amy was arrested on two separate occasions. First, Amy was arrested
for harboring a fugitive in July of 2008 when she allowed Robert’s brother to stay in her
home. However, the record indicates that formal charges were never filed on this offense. 
Second, in March of 2009, just two months before her termination hearing, Amy was
arrested and indicted for possession of cocaine. The record does not indicate the final
disposition of this charge. Amy denied taking drugs with Robert during the time that she
and the children were living with him, but following this arrest, Amy sent a letter to the
Department and to the attorney ad litem for the children attempting to explain the charges
and admitting to her cocaine use. In the letter, Amy wrote,
On 3-20-09 around 2:30 p.m. a friend picked me up because I was feeling
lonely and depressed. I decided to drink some beer. I have been feeling
depressed for over a year . . . . My friend and I ended up in a local bar. I
drank several beers to try to feel better. An acquaintance noticed that I was
very depressed and offered me some cocaine. I didn’t want to make a scene
so I accepted it and put it in my pant pocket.

          According to Karen Smithey, Amy’s CPS caseworker, when asking about the letter,
Amy said that she would test positive because she had taken some of the drugs.
 
          On May 26, 2009, in a bench trial, the trial court heard the testimony of Amy and
several other witnesses in a termination hearing initiated by the Department. Catherine
Parsons-Key, who counseled Amy and the three older children, testified that both of the
older boys remember violence in the home from the time Amy and Robert were together. 
She also testified that, although Amy was consistent with her attendance of counseling, in
her opinion, Amy lacked an “understanding of the process of action consequences.” 
Parsons-Key testified that she did not believe it would be in the best interest of the children
to return them to their mother.
          Dr. Michelle Moran, a licensed psychologist who had performed a psychological
evaluation of Amy in 2007, testified at the hearing that Amy had a personality disorder with
“dependent and avoidant personality traits” including issues with self-esteem,
assertiveness, judgment, and goal-directed behavior. Dr. Moran concluded that if Amy
had continued contact with Robert and had used drugs, termination of her parental rights
would be in the best interest of the children.
          Additionally, Karen Smithey, the CPS caseworker, and Stacie Marthiljohni, the court-appointed special advocate (“CASA”), each recommended that Amy’s parental rights be
terminated based on what they perceived to be a continued danger of abuse.
          In its order dated May 28, 2009, the trial court terminated Amy’s parental rights. 
This appeal ensued.
II. Standard of Review
          “Due process requires the application of the clear and convincing evidence standard
of proof in parental termination cases.” In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). 
"Clear and convincing evidence means the measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established." Id. at 264 (internal quotations omitted). This standard of proof
raises the burden of proof on the appellee upon appeal. “In a factual sufficiency
review . . . a court of appeals must give due consideration to evidence that the factfinder
could reasonably have found to be clear and convincing.” Id. at 266 (citing In re C.H., 89
S.W.3d 17, 25 (Tex. 2002)). “If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so significant that a
factfinder could not reasonably have formed a firm belief or conviction, then the evidence
is factually insufficient.” Id. “Rendition of judgment in favor of the parent would generally
be required if there is legally insufficient evidence.” Id. 
          The Texas Supreme Court has instructed that, “[t]he distinction between legal and
factual sufficiency when the burden of proof is clear and convincing evidence may be a fine
one in some cases, but there is a distinction in how the evidence is reviewed.” Id. “In
evaluating evidence for legal sufficiency under a clear and convincing standard, we review
all the evidence in the light most favorable to the finding to determine whether a
reasonable factfinder could have formed a firm belief or conviction that the finding was
true.” State v. K.E.W., 315 S.W.3d 16, 20 (Tex. 2010). “We resolve disputed fact
questions in favor of the finding if a reasonable factfinder could have done so, and we
disregard all contrary evidence unless a reasonable factfinder could not have done so.” 
City of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005); In re J.F.C., 96 S.W.3d at 266. 
III. Analysis
          The trial court terminated Amy’s parental rights to the children pursuant to section
161.001 of the Texas Family Code, which provides that the parent-child relationship may
be terminated based on any one of nineteen acts or omissions of a parent, along with a
finding that the termination is in the best interest of the child. See Tex. Fam. Code Ann.
§ 161.001; In re A.V., 113 S.W.3d 355, 362 (Tex. 2003) (“[T]he purpose of the State's
intervention in the parent-child relationship is to protect the best interests of the children,
not to punish parents for their conduct.”). Therefore, if there was legally and factually
sufficient evidence to support the trial court’s finding that termination was in the best
interest of the children, then any one, individual ground for termination under section
161.001 is sufficient to affirm the judgment.
          By her first issue, Amy argues that the evidence presented during the termination
hearing was legally and factually insufficient to support a finding that termination of the
parent-child relationship was in the children’s best interest. Specifically, Amy contends that
“the testimony of the counselor, CASA representative, CPS caseworker and psychologist
as to the best interest of the children did not establish by clear and convincing evidence
that termination would be in the children’s best interest.” We disagree. 
          In accordance with In re J.F.C., 96 S.W.3d at 266, we give due regard to the
following evidence that we believe the trial court could have found to be clear and
convincing: (1) Amy failed to provide a stable home for the children, often moving in and
out of state housing and shelters, and failed to consistently provide electricity and running
water in the home; (2) Amy displayed a desire to continue her relationship with Robert by
visiting him in prison after his parental rights were terminated, despite her knowledge that
Robert was abusive and a danger to the children; (3) Amy had, on occasion, left her
children with neighbors for extended periods of time and had lied to caseworkers
concerning her whereabouts; (4) Amy admitted to using cocaine and alcohol just weeks
before the hearing; (5) Amy lacked the “understanding” necessary to raise children; (6)
Amy had a personality disorder with “dependent and avoidant personality traits” including
issues with self-esteem, assertiveness, judgment, and goal-directed behavior; and (7) in
the professional opinions of four different Department witnesses, it would be in the best
interest of the children to terminate Amy’s parental rights.
          In our legal sufficiency review, we “resolve disputed fact questions in favor of the
finding if a reasonable factfinder could have done so, and we disregard all contrary
evidence unless a reasonable factfinder could not have done so.” City of Keller, 168
S.W.3d at 817; In re J.F.C., 96 S.W.3d at 266. Applying this standard, we hold that the
foregoing evidence was legally sufficient to allow a reasonable factfinder to form a firm
belief or conviction that it was in the best interest of the children to terminate Amy’s
parental rights. See K.E.W., 315 S.W.3d at 20.
          In our factual sufficiency review, we must ask whether “the disputed evidence that
a reasonable factfinder could not have credited in favor of the finding is so significant that
a factfinder could not reasonably have formed a firm belief or conviction.” See In re J.F.C.,
96 S.W.3d at 266. Here, we weigh Amy’s evidence that she regularly attended counseling,
that she was living in a stable home, had a job cleaning houses, and that all relations with
Robert were severed because he was serving an extended prison sentence. We cannot,
however, say that this evidence is so significant as to prevent the factfinder from forming
a firm belief or conviction that termination of Amy’s parental rights was in the children’s
best interest. See id. Therefore, we hold that the evidence was factually sufficient to
support the trial court’s finding. Accordingly, we overrule Amy’s first issue. 
          Having held that there was legally and factually sufficient evidence to support the
finding that it was in the children’s best interest to terminate Amy’s parental rights, if any
one of the three grounds upon which the trial court based its judgment is supported by
legally and factually sufficient evidence, we must affirm the judgment. 
          By her second issue, Amy challenges the first ground on which the judgment is
based as not being supported by legally and factually sufficient evidence. Specifically, she
argues that the trial court’s finding that she “knowingly placed or knowingly allowed the
children to remain in conditions or surroundings which endanger[ed their] physical or
emotional well-being” was not supported by legally and factually sufficient evidence. See
Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon 2008).
          Applying our standard for legal sufficiency, we look specifically to the evidence
presented at trial that Amy: (1) had previously not kept a stable living environment; (2) kept
the children in a violent home which had affected the two older boys significantly; (3) took
the children, including J.K.R., to visit Robert in prison, despite knowledge of Robert’s
violent and abusive tendencies; (4) had not held a stable job; (5) allowed the three older
children to be present while Robert drank and used drugs; and (6) admitted to using
cocaine. We hold that the foregoing evidence was legally sufficient to allow a reasonable
factfinder to form a firm belief or conviction that Amy had knowingly placed or allowed the
children to remain in conditions or surroundings which endangered their physical or
emotional well-being. See K.E.W., 315 S.W.3d at 20.
          Similarly, applying our standard for factual sufficiency, we note that Amy testified
during the trial that many of these events would not recur, specifically, because she had
obtained employment, had an appropriate living space, and would no longer have contact
with Robert. Again, however, we do not believe this evidence is so significant as to prevent
the factfinder from forming a firm belief or conviction that Amy had previously committed
the statutorily proscribed act of knowingly placing or allowing the children to remain in
conditions or surroundings which endangered their physical or emotional well-being. See
In re J.F.C., 96 S.W.3d at 266. Additionally, we note that the statute does not require a
likelihood of repetition in order to allow the court to terminate the parent-child relationship. 
See Tex. Fam. Code Ann. § 161.001(1)(D) (“The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has . . .
knowingly placed or knowingly allowed the child to remain in conditions or surroundings
which endanger the physical or emotional well-being of the child . . . .” (emphasis added)). 
For the foregoing reasons, we hold that the evidence was factually sufficient to support the
trial court’s finding. Accordingly, we overrule Amy’s second issue.
          Having found one ground upon which the judgment was supported by legally and
factually sufficient evidence, we need not address whether the court’s other two grounds
for decision under subsections (E) and (O) of section 161.001 of the family code were
supported by legally and factually sufficient evidence, and therefore, need not address
Amy’s third and fourth issues. See Tex. Fam. Code Ann. §§ 161.001(1)(E), (O) (Vernon
2008); see also Tex. R. App. P. 47.1.
IV. Conclusion
          Finding no meritorious issue on appeal, we affirm the trial court’s orders. 



                                                                               ________________________ 
                                                                               GINA M. BENAVIDES,
                                                                               Justice
 
Delivered and filed this the
10th day of February, 2011.